UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. LILA JENKINS,<br><br>    Plaintiff,<br><br>    v.<br><br>EMPOWERING INTEGRATED<br>CARE SOLUTIONS, LLC,<br><br>    Defendant. | CASE NO. 1:22-cv-480<br><br>JUDGE DAVID A. RUIZ<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff/Relator Lila Jenkins (Plaintiff) filed an Amended Complaint raising the following causes of action: (1) violation of the federal False Claims Act; (2) retaliation under the False Claims Act; and (3) whistleblower retaliation in violation of Ohio Revised Code (O.R.C.) § 4113.52. (R. 14, PageID# 74-77). Defendant Empowering Integrated Care Solutions, LLC (Defendant) filed a Motion to Dismiss the Amended Complaint. (R. 19). Plaintiff filed a brief in opposition and Defendant filed a reply in support of the motion to dismiss. (R. 21; R. 22). Finally, the United States filed a Statement of Interest. (R. 23). For the reasons stated below, the Court GRANTS in part and DENIES in part Defendant's Motion.

## I. Factual Allegations

Plaintiff is a Psychiatric-Mental Health Nurse Practitioner-Board Certified (PMHNPBC) with a Doctor in Nursing Practice (DNP) and a resident of Ohio. (R. 14, PageID# 63, ¶¶1, 12). Defendant is alleged to provide "behavioral health services, including mental health case management and assessment, to individuals with developmental disabilities and other mental health diagnoses" and has a principal place of business in Beachwood, Ohio. *Id*. at ¶¶2, 13.

It is alleged that Defendant "maintains a policy of performing behavioral health services that are neither medically necessary nor done within the scope of practice of the provider, which are subsequently billed to Medicaid, for the purpose of meeting artificial billing quotas to drive up revenue." (R. 14, PageID# 4). Plaintiff contends she "became aware" of FCA violations and other illegal practices through "direct observations of Defendant's practices when she worked for Defendant as a PMHNPBC" beginning her employment on August 3, 2021. *Id*. at ¶¶7, 48. By virtue of her license, [Plaintiff] is a registered nurse (RN) and also an advanced practice registered nurse (APRN), and is therefore able to direct the nursing practice of licensed practical nurses (LPNs). *Id*. at ¶50.

Plaintiff further alleges that she "tried to put an end to Defendant's fraudulent billing scheme by instructing subordinate nurses, who were acting outside the scope of their licenses and billing for services that were not medically necessary, and by urging Empowering's owner and CEO, Patricia Berger, to cease her fraudulent practices." (R. 14 at ¶8). Plaintiff asserts she was terminated for her efforts. *Id*.

## II. Standard of Review

When ruling upon a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all the factual allegations contained in the complaint

and construe the complaint in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *accord Streater v. Cox*, 336 F. App'x 470, 474 (6th Cir. 2009). Nonetheless, a court need not accept a conclusion of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955, 167 L.Ed. 2d 929.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955, 167 L.Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L.Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

### III. Analysis

**A. Count One: Violation of the False Claims Act (FCA)**

Defendant's motion to dismiss argues that Count One of the Amended Complaint—an alleged violation of the FCA—should be dismissed because Plaintiff failed to plead with the heightened requirements of Federal Rule of Civil Procedure 9(b).

3

(R. 19, PageID# 93-99). Defendant's assertion that an FCA claim is subject to pleading requirements of fraud is supported by Sixth Circuit precedent.

> We recently held in a published case that a complaint alleging FCA violations must allege the underlying facts with particularity as required by Rule 9(b). S*ee Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562–63 (6th Cir. 2003). Therefore, the district court correctly required Relator's complaint to comply with Rule 9(b).
>
> Although the FCA's statutory language does not expressly require Rule 9(b) compliance, it strongly suggests the propriety of requiring such compliance. Section 3729(a)(1) imposes liability when a person "knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a *false or fraudulent* claim for payment or approval." 31 U.S.C. § 3729(a)(1) (emphasis added). Moreover, Section 3729(a)(3) prohibits a person from "conspir[ing] to *defraud* the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729 (emphasis added). Legislative history further reveals that Congress views the FCA "[a]s a civil remedy designed to make the Government whole for fraud losses." S. Rep. 99–345, at 6 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5271; *see also United States v. Borstein*, 423 U.S. 303, 309, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976) (noting that the purpose of the FCA, when originally enacted, was to stop "the massive frauds perpetrated by large contractors during the Civil War"). In short, "[i]t is self-evident that the FCA is an anti-fraud statute." *Gold v. Morrison–Knudsen Co.*, 68 F.3d 1475, 1476 (2d Cir. 1995). Thus, when pleading violations of the FCA, a fraud statute, one necessarily makes averments of fraud and necessarily must state with particularity the circumstances constituting the fraud. Fed.R.Civ.P. 9(b).

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 641–42 (6th Cir. 2003) (emphasis in original).

Furthermore, Defendant asserts that courts have imposed another requirement specific to FCA claims. (R. 19, PageID# 93). According to Sixth Circuit precedent, even after finding that a plaintiff has "sufficiently alleged a fraudulent scheme," a plaintiff "must also identify a representative false claim that was actually submitted to the government. Although the relator does not need to identify every false claim submitted for payment, he must identify with specificity 'characteristic examples that are illustrative

4

of the class of all claims covered by the fraudulent scheme.'" *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 470 (6th Cir. 2011) (internal citations omitted) (*quoting U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510-511 (6th Cir. 2007); *see also U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 506 (6th Cir. 2008) (holding that relator failed to "include specific examples of the defendant's claims for payment" when it alleged defendant entered into an "undetermined number of contracts with the federal government"); *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) ("Rule 9(b) does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply ... that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government.")

In Plaintiff's brief in opposition, she asks the court to deny the motion to dismiss in its entirety. (R. 22, PageID# 113, 123). Nevertheless, Plaintiff's brief in opposition is completely unresponsive to Defendant's argument with respect to Count One, and the requirement for pleading FCA claims with particularity. (*See generally* R. 22). Rather, Plaintiff merely asserts that she is only subject to the notice pleading standards of Fed. R. Civ. P. 8(a)(2) *with respect to Counts Two and Three*. *Id*. at PageID# 114. Plaintiff makes no argument that the Rule 9(b) pleading with particularity standard is inapplicable to Count One. Moreover, Plaintiff makes no argument that she has satisfied the Rule 9(b) standard with respect to Count One. *Id*. Finally, Plaintiff fails to identify a representative false claim that was actually submitted to the government.

"It is well established that, if a plaintiff fails to respond or to otherwise oppose a defendant's motion to dismiss, a district court may deem the plaintiff to have waived

5

opposition." *Kuhlman v. City of Cleveland*, No. 1:22-CV-00536, 2023 WL 2652585, at *11 (N.D. Ohio Mar. 23, 2023) (Barker, J.) (*citing Humphrey v. U.S. Attorney Gen.'s Office*, 279 Fed. App'x 328, 331 (6th Cir. 2008) (finding that a plaintiff's failure to oppose arguments raised in the defendant's motion to dismiss is grounds for the district court to assume that opposition to the motion is waived)). In *Kuhlman*, the district court was confronted with a similar scenario where the plaintiff opposed a motion to dismiss, but made no counter-argument to the defendant's assertion that plaintiff's state law claims were barred due to political subdivision immunity. *Id*. The *Kuhlman* decision, therefore, concluded that the plaintiff "waived any argument in opposition to the City's argument that Plaintiff's state law claims against the City are barred by the [Political Subdivision Tort Liability Act]." *Id*. at *11.

Similarly, this Court concludes that Plaintiff has waived any argument in opposition to Defendant's argument that Count One of the Amended Complaint fails to plead with the requisite specificity. Therefore, Count One of the Complaint is hereby DISMISSED.

**B. Count Two: Retaliation under the False Claims Act**

The parties are in agreement that the retaliation claim in Count Two is governed by the standard set forth in *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559 (6th Cir. 2003). (R. 19, PageID# 99; R. 21, PageID# 117, n. 9). "In order to establish a claim for retaliatory discharge [under the FCA], a plaintiff must show: (1) he engaged in a protected activity; (2) his employer knew that he engaged in the protected activity; and (3) his employer discharged or otherwise discriminated against the employee as a result of the protected activity. " *Id*. at 566 (*citing McKenzie v. BellSouth Telecomm., Inc.*, 219

6

F.3d 508, 513–514 (6th Cir. 2000)).

Defendant contends Plaintiff's retaliation claim here fails for at least two reasons. (R. 19, PageID# 99). First, Defendant asserts that Plaintiff failed to properly allege that she engaged in protected activity under the FCA as defined in 31 U.S.C. § 3730(h)(1) which states that "[a]ny employee … shall be entitled to all relief necessary to make that employee …whole, if that employee … is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."

Defendant argues Plaintiff has not alleged any acts reasonably embodying efforts to stop an alleged FCA violation, and, therefore, she has not alleged that she engaged in protective activity under the FCA. (R. 19, PageID# 99-100). "The Sixth Circuit held in *McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 516 (6th Cir. 2000), that internal reports 'may constitute protected activity,' provided such internal reports 'allege fraud on the government.'" *Jones-McNamara v. Holzer Health Sys.*, 630 Fed. App'x 394, 398 (6th Cir. 2015) (observing that "an employee need not complete an investigation into potential fraud or uncover an actual FCA violation to undertake protected activity") (*citing Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 416 (2005).

The Sixth Circuit in *Jones-McNamara* stated:

Under the new version of § 3730(h) extending protection to "lawful acts done ... in furtherance of an action under this section or other efforts to stop " a FCA violation, the requirement that conduct could develop into a "viable FCA action"

7

> no longer accurately reflects the statutory language. 31 U.S.C. § 3730(h) (emphasis added); *see also Mikhaeil*, 2015 WL 778179, at *7. While the statutory amendment removes *McKenzie*'s requirement that protected conduct could "lead[] to a viable FCA action," *McKenzie*'s reasonable belief requirement survives the amendment. Now, a plaintiff's activities must reasonably embody "efforts to stop" FCA violations. 31 U.S.C. § 3730(h). The Seventh Circuit's test for protected activity enunciates this reasonableness standard by providing that an employee's investigation into alleged fraud is protected only where: "(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government." *Fanslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 480 (7th Cir. 2004); *see also Wilkins v. St. Louis Hous. Authority*, 314 F.3d 927, 933 (8th Cir. 2002); *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002). Therefore, although McNamara need not establish that Holzer actually violated the FCA, she must show that her allegations of fraud grew out of a reasonable belief in such fraud.

*Jones-McNamara*, 630 Fed. App'x at 399-400.

Plaintiff's Amended Complaint pleads that "[u]pon realizing that [Defendant] had been billing Medicaid for services that were not properly reimbursable, Jenkins confronted Berger about [Defendant's] practices and instructed LPNs to cease engaging in actions that would result in their acting outside the scope of their practice." (R. 14, ¶ 62). In an exhibit attached to the original complaint, Plaintiff included an email sent to her employer, which stated:

> Regarding your email yesterday, after reviewing the information 6 page packet that I sent you from the Oho [sic] Board of Nursing RN and LPN scope of practice these are the areas that I believe apply to Empowering that are currently operating incorrectly that are resulting in billing Medicaid for services that are inappropriate and potentially Fraudulent.
>
> * * *
>
> These are the areas that I am concerned about that if reviewed by Medicaid could be considered fraudulent.
>
> 1) Since LPN are doing the care plans, they are operating outside of their scope of practice, anything billed to Medicaid that is outside of the LPN scope of practice would be considered fraudulent. As all Medicaid billing

8

> requires the provider to be acting within their scope of practice in order to submit billing.
>
> * * *
>
> **I think until we hear back from them the LPN should not being [sic] seeing any patients who are not prescribed psychotropic medications. I did send them an email telling them that tonight.** I think the home visits are at the biggest risk of being potentially fraudulent due to them being outside of their scope of practice and not actually providing them with any real service that is billable to Medicaid.

(R. 1-4, PageID# 27-28, 33) (emphasis added).[1]

To support her allegedly "reasonable belief" that Defendant's actions were fraudulent, the Amended Complaint points to sections of Ohio statutes and administrative codes to buttress her belief that the complained of actions were fraudulent. Plaintiff's letter also asserted that she tried to stop the allegedly fraudulent actions by informing her employer and emailing the LPNs to stop the activity that she identified as fraudulent for Medicaid purposes. (R. 1-4, PageID# 33) ("I did send them an email telling them that tonight.") Therefore, the Court finds Plaintiff has sufficiently pleaded that she made "efforts to stop 1 or more violations" of the FCA.

In its reply brief, Defendant argues, for the first time, that Plaintiff did not have a

---

[1] Defendant's reply brief asserts that "Plaintiff opposed the dismissal of Count II largely on the basis of a document not attached to or filed with the [Amended Complaint]. This document should not be considered in determining whether Plaintiff stated a viable claim for relief in Count II." (R. 22, PageID# 128). Defendant is correct that the Amended Complaint supersedes the original complaint, and that the letter/email referenced in Plaintiff's opposition brief was attached to original Complaint but not attached to the Amended Complaint. Nevertheless, Plaintiff's opposition brief asserted that "Defendant's counsel emailed Plaintiff's counsel demanding that the Complaint be amended, as counsel alleged that the unsealed Complaint and the corresponding exhibits attached included information that would violate HIPAA laws." (R. 21, PageID# 113). Defendant's reply brief does not deny this characterization of events. Therefore, the Court will consider the email/letter as part of the record.

9

"reasonable belief that False Claims Act violations had occurred …" (R. 22, PageID# 128). Defendant's argument in its opening brief, however, revolved around the rather specious assertion that "[t]here are no allegations about any 'efforts to stop' any alleged False Claims Act violations by EICS and Plaintiff attached no emails or documents as exhibits to the FAC stating otherwise." (R. 19, PageID# 100).[2] "[T]he Sixth Circuit repeatedly has recognized that arguments raised for the first time in a party's reply brief are waived." *Sims v. Piper*, No. 07-14380, 2008 U.S. Dist. LEXIS 123689, 2008 WL 3318746, at *5 (E.D. Mich. Aug. 8, 2008) (*citing United States v. Lopez-Medina*, 461 F.3d 724, 743 (6th Cir. 2006) and *Lexicon, Inc. v. Safeco Ins. Co. of America, Inc.*, 436 F.3d 662, 676 (6th Cir. 2006)).

Further, Defendant's argument—that an email response it sent to Plaintiff after ostensibly discussing the issues she raised with Medicaid consult/trainer Diane Zucker negates Plaintiff's reasonable belief—is unsupported by any authority. Moreover, these are factual inquiries not appropriate for resolution in a motion to dismiss.

Defendant's second argument is that Plaintiff failed to allege that Defendant knew Plaintiff was engaging in protected activity, relying on *Yuhasz* for the proposition that employees "must make clear their intentions of bringing or assisting in an FCA action" to show retaliation. (R. 19, PageID# 100, *citing Yuhasz*, 341 F.3d at 568). Defendant contends that even if Plaintiff spoke to her employer "about the various scope of practice concerns and inappropriate billing practices she observed," Plaintiff's allegations are

---

[2] This entire argument appears premised on the Amended Complaint removing emails attached to the original complaint, ostensibly at Defendant's request for HIPAA purposes. The Court declines to penalize Plaintiff's cooperation with defense counsel's request.

insufficient where an employee merely informs an employer about violations witnessed while performing ordinary duties. *Id*. at PageID# 100-101. Defendant reasons that Plaintiff alleges that "it was her job to supervise the LPN's," just as it was the plaintiff's job in *Yuhasz* to supervise production quality. (R. 19, PageID# 100-101, citing 341 F.3d at 567 ("By informing Brush that its certifications were illegal and that other companies had incurred liability under the FCA for false claims, Yuhasz was simply performing his ordinary duties as a supervisor of laboratory testing. Brush cannot be charged with notice on this basis.")).

In *Yuhasz*, a terminated employee, who worked as a laboratory manager, brought a *qui tam* action against his former employer, a manufacturer of alloys. 341 F.3d at 561-62. The employee claimed that the manufacturing company had falsely certified that its alloys met applicable standards, a necessary step to receive payment under government contracts. *Id*. He further claimed that he "specifically informed and advised [Brush] of the unlawful and illegal nature of its certifications of compliance" and "specifically raised with [the defendant] … that other companies had incurred liabilities under the False Claims Act for submission of false and fraudulent claims." *Id*. at 567. However, such internal reporting did not qualify as a protected activity under the FCA in *Yuhasz*, as it was insufficient to show that the employer was aware that the employee was *pursuing a FCA case* at the time it discharged him. *Id*. at 567–68. Instead, as Defendant accurately points out, the plaintiff was simply acting within the scope of his "ordinary duties" and "employment obligations." *Id*.

But a recent decision from a district court within this Circuit explained that *Yuhasz* was decided *before* amendments to the FCA, and that some of aspects of its

11

holdings were superseded by statute. That court aptly asserted::

> However, the *Yuhasz* case was decided in 2003, prior to more recent amendments to the False Claims Act that expanded the scope of "protected activity." At the time *Yuhasz* was decided, § 3730(h) of the False Claims Act read:
>
> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms or conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.
>
> *Id*. at 566 (quoting 31 U.S.C. § 3730(h) (2003)). Thus, when *Yuhasz* was decided, the language of the Act limited the scope of the protected activity to "acts done ... in furtherance" of a *qui tam* action, including investigations for such an action, initiating the action, or testifying or assisting in the action. *See id*. at 567–68.
>
> However, in 2009 and 2010, the legislature amended § 3730(h), formally expanding the scope of protected activity covered by the Act. After the 2009 and 2010 amendments, § 3730(h) not only protects "lawful acts done ... in furtherance of" a *qui tam* action brought under the Act, but also "other efforts to stop 1 or more" False Claims Act violations. *See* 31 U.S.C. § 3730(h); *Miller v. Abbott Labs.*, 648 F. App'x 555, 560 (6th Cir. 2016) (explaining 2009 amendment). Thus, under the most recent version of § 3730(h), the Act protects actions taken in furtherance of a *qui tam* action, as well as "steps taken to remedy the misconduct through methods such as internal reporting to a supervisor ... and refusals to participate in the misconduct that leads to the false claims, whether or not such steps are clearly in furtherance" of a *qui tam* action. *See* 155 Cong. Rec. E1295-03, E1300 (June 3, 2009) (statement of Rep. Berman).
>
> \*\*\*
>
> Nevertheless, Procarent urges the Court to apply the standard announced in *Yuhasz*. [R. 105, pp. 16–17]. It acknowledges the most recent amendments to § 3730(h) but insists that "courts have continued to interpret its provisions in light of the Sixth Circuit's holding in *Yuhasz* even after the amendment[s] occurred." *Id*. at 16.
>
> \*\*\*
>
> More recent Sixth Circuit case law resolves any doubts on this issue. In 2016, after *Goodwin* was decided, the Sixth Circuit clarified that "pre-amendment case law holding that activity is protected only if it is in furtherance of a potential or actual *qui tam* action is no longer applicable." *Miller*, 648 F. App'x at 560. Thus,

12

>if there existed any confusion about the application of the 2009 and 2010 amendments, *Miller* explained that an employee's activities are protected if they "reasonably embody 'efforts to stop' [False Claims Act] violations," and this includes internal reports of fraud on the government. *Id*. (quoting *Jones-McNamara*, 630 F. App'x at 399) (internal quotation marks omitted). However, the Sixth Circuit has also clarified that the "efforts to stop" suspected violations "must stem from a reasonable belief that fraud is being committed against the federal government." *Fakorede v. Mid-S. Heart Ctr., P.C.*, 709 F. App'x 787, 789 (6th Cir. 2017) (citing *Jones-McNamara*, 630 F. App'x at 400). Thus, "to plead protected activity, [the plaintiff] must allege conduct directed at stopping what he reasonably believed to be fraud committed against" the United States government. *Id*. (citing Miller, 648 F. App'x at 560).
>
>Having determined that internal reports of suspected fraud may qualify as a protected activity regardless of their nexus to a potential or actual *qui tam* action, the Court now turns to the allegations in the Second Amended Complaint and finds that each element of a *prima facie* case has been alleged. On this point, it is important to note that retaliation claims arising under the False Claims Act are not subject to the heightened pleading standard of Rule 9(b). *See Goodwin*, 2012 WL 1079086, at *3 (citing *Kachaylo v. Brookfield Township Bd. of Trustees*, 778 F.Supp.2d 814, 817, n.1 (N.D. Ohio 2011)).

*United States ex rel. Dunn v. Procarent, Inc.*, 615 F. Supp. 3d 593, 621–23 (W.D. Ky. 2022) (footnotes omitted). The *Dunn* decision found the plaintiff had established a *prima facie* FCA retaliation claim where plaintiff made "internal reports" of suspected FCA violations, such as "report[ing] her concerns to Procarent's president … [that] it was improperly billing repetitive ambulance runs." *Id*. at 623.

The present case is comparable to *Dunn.* The Court finds Plaintiff has sufficiently pled a *prima facie* case of FCA retaliation where she was terminated after making internal reports of suspected FCA violations that, at least on their face, appear reasonable. This finding is also consistent with the Sixth Circuit's observations in *Jones-McNamara* that internal reports may constitute protected activity under the FCA if they allege fraud on the government. 630 Fed. App'x at 398. As stated above, Defendant's assertion—that Plaintiff lacks a reasonable belief due to Defendant's conversations with a Medicaid

13

consultant—would require resolution of issues of fact that are inappropriate at this stage of the pleadings. Moreover, Defendant's conversation with a consultant actually buttresses Plaintiff's argument that her email/letter put Defendant on notice that Plaintiff was engaging in protected activity by reporting suspected FCA violations.

Therefore, Defendant's Motion to Dismiss Count Two is not well taken and DENIED.

**C. Count Three: Whistleblower Retaliation in Violation of O.R.C. § 4113.52**

Defendant also advocates for the dismissal of Count Three—an alleged violation of Ohio Whistleblower's Act, O.R.C. § 4113.52. Here Defendant argues the following: (1) Plaintiff failed to assert that she reasonably believed that her employer had committed a "criminal violation" likely to cause imminent risk of physical harm to persons or public safety, nor has Plaintiff alleged that she complained of such "specific criminal violation" when raising her purported concerns to Defendant; and (2) Plaintiff failed to allege that she engaged in protected activity covered by the statute, because she did not report any allegedly hazardous conditions constituting criminal violations to outside authorities. (R. 19, PageID# 101-106). These arguments, however, are not supported by the plain language of the statute.

The relevant Ohio statute reads as follows:

(A)(1)(a) If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct, *and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety*, *a felony*, ***or*** *an improper solicitation for a contribution*, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient

14

> detail to identify and describe the violation. *If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, with the inspector general* if the violation is within the inspector general's jurisdiction, with the auditor of state's fraud-reporting system under section 117.103 of the Revised Code if applicable, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged.

O.R.C. § 4113.52 (emphasis added).

Contrary to Defendant's first argument, O.R.C. § 4113.52 does not limit whistleblower protection to complaints concerning criminal offenses likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety. The statute is plainly written in the disjunctive. Thus, Plaintiff adequately states a claim because she alleges a "violation of ... federal statute" that is "a felony." *Id.*

The Amended Complaint plainly alleges that Defendant's actions constituted Medicare fraud. Pursuant to 18 U.S.C. § 1347(a), health care fraud is a felony offense defined as: "Whoever knowingly[3] and willfully executes, or attempts to execute, a scheme or artifice—(1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both…."

To the extent Defendant suggests *Dobrski v. Ford Motor Company*, 698 F. Supp.

---

[3] "With respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section." 18 U.S.C. § 1347(b).

15

2d 966 (N.D. Ohio 2010) interpreted the statute in question as requiring that a criminal act "pose[] an imminent risk of physical harm to person or public health," Defendant misstates *Dobrski's* holding. (R. 19, PageID# 103). That case unambiguously states that "[t]he employee must have a reasonable belief that the violation is *either a felony or* a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety." *Id.* at 979 (emphasis added). Therefore, Defendant's argument is rejected in its entirety.

To the extent Defendant's brief suggests that Plaintiff was obligated to report the activity that she believed to be a felony to outside authorities in order to gain whistleblower protection under the statute, such a position runs afoul of the plain language of the statute, and is unsupported by Defendant's citations to case law.

The relevant portions of the statute, italicized above, merely states that if the employer does not correct the violation or make a reasonable effort to do so, the employee "*may* file a written report" with the specified authorities. O.R.C. § 4113.52(A)(1)(a) (emphasis added). The plain language of the statute does not mandate such a reporting requirement. The Ohio Supreme Court's interpretation of the statute in *Contreras v. Ferro Corp.*, 73 Ohio St. 3d 244, 248-49, 652 N.E.2d 940, 944 (1995) also does not support Defendant's position. There, the *Contreras* court stated::

> [T]o restate, R.C. 4113.52(A)(1) protects an employee for reporting certain information to outside authorities *only if* the following requirements have first been satisfied: (1) the employee provided the required oral notification to the employee's supervisor or other responsible officer of the employer, (2) the employee filed a written report with the supervisor or other responsible officer, and (3) the employer failed to correct the violation or to make a reasonable and good faith effort to correct the violation. Further, R.C. 4113.52(A)(1)(a) sets forth the sole acceptable manner in which the employee may "blow the whistle" to outside authorities. Specifically, the employee may file a written report that

16

>provides sufficient detail to identify and describe the violation with the proper prosecuting authority or other appropriate official or agency with regulatory authority over the employer and the industry, trade or business in which the employer is engaged. An employee who fails to follow the specific requirements of the statute is not a protected whistleblower and, accordingly, may not bring a wrongful discharge action pursuant to R.C. 4113.52.

*Contreras*, 73 Ohio St.3d at 249 (emphasis added). In other words, the *Contreras* decisions emphasized that the statute's intent was to give employer's the first opportunity to rectify an alleged wrong. *Id*. at 248 ("Clearly, the provisions of R.C. 4113.52(A)(1) contemplate that the employer shall be given the opportunity to correct the violation. The statute mandates that the employer be informed of the violation both orally and in writing. An employee who fails to provide the employer with the required oral notification and written report is not entitled to statutory protection for reporting the information to outside authorities.")

Defendant, however, attempts to turn the rationale of *Contreras* inside out. In order to obtain whistleblower protection, an employee must *first* report a wrong to his or her employer before reporting the same to outside authorities. An employee *loses* whistleblower protection under Ohio law if he or she skips the mandatory first step of reporting an alleged felony or criminal act to the employer and opts to go straight to the authorities. Defendant's argument for the inverse, however, is not persuasive because requiring otherwise would permit a supervisor or employer to vitiate whistleblower protections by terminating an employee *after* receiving notice of a felony, for example, but *before* the employee reports the same to outside authorities. Such a result would frustrate the very purpose of the statute. Further, a whistleblower is not *required*, under the statute, to report wrongdoing to authorities after having reported the same to the

17

employer. The Ohio appellate court decision cited by Defendant, *Wood v. Dorcas*, 142 Ohio App. 3d 783, 790, 757 N.E.2d 17, 22 (Ohio Ct. App. 2001), merely reiterates and refines the holding of *Contreras* that an employee loses whistle blower protection if he or she "involv[es] outsiders" (*i.e.* the authorities) "*before* affording the employer the opportunity to take corrective action that defeats the protections of the statute." (emphasis added).

Consequently, Defendant's motion to dismiss Count Three is not well taken and DENIED.

**D. Failure to File Under Seal**

Defendant asserts that the Amended Complaint must be dismissed because it was not filed under seal pursuant to 31 U.S.C. § 3730(b)(2). (R. 19, PageID# 94). The statue states as follows:

> (b) **Actions by private persons**.--(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.
>
> (2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

31 U.S.C. § 3730(b).

The original complaint was filed under seal on March 25, 2022. (R. 1). The Court ordered the complaint to be unsealed on October 6, 2022, after the United States declined to intervene. (R. 9). Plaintiff filed the Amended Complaint on November 29, 2022. (R.

18

14). The text of the Amended Complaint states that "[i]n accordance with 31 U.S.C. § 3730(b)(2), this Amended Complaint is filed under seal and will remain under seal for a period of at least 60 days from its filing date or such other date as is required by law or the Court so orders, and shall not be served upon Defendant unless the Court so orders." *Id*. at ¶16. Despite said language, however, the Amended Complaint was not filed under seal.

Plaintiff contends that "[n]othing in 31 U.S.C. § 3730(b)(2) requires a complaint to be placed under seal after it was unsealed by a court, even after it was amended." (R. 21, PageID# 117). The United States filed a Statement of Interest indicating that "the Sixth Circuit has not ruled on the issue of whether an amended complaint in a declined *qui tam* action must first be filed under seal…." (R. 23, PageID# 138-39). The United States asserts that some district courts have found that an amended *qui tam* complaint should be filed under seal where it raises "substantively new allegations or claims or names new defendants" but that an amended *qui tam* complaint "that is substantively similar to the original complaint need not be sealed." *Id*., citing *United States ex rel. Kolchinsky v. Moody's Corp.*, 162 F. Supp. 3d 186, 197-198 (S.D.N.Y. 2016) ("The purpose of the sealing requirement is to give the Government the opportunity to investigate a relator's claims and decide whether to intervene in the action…. In recent years, district courts have generally agreed … that when an amended complaint makes similar allegations of fraud, resealing is not required."); *United States ex rel. Hagerty v. Cyberonics, Inc.*, 95 F. Supp. 3d 240 (D. Mass. 2015) (finding that an "amended complaint did not have to be filed under seal, and relator sufficiently complied with the pre-suit requirements of the FCA" where the allegations in the amended complaint were

19

"substantially similar").

The Court finds the Amended Complaint is substantially similar to the original complaint, which complied with the requirements of being filed under seal and provided the United States with an opportunity to consider whether to intervene in this action. Defendant has cited no authority suggesting that dismissal is proper under these circumstances. Therefore, Defendant's motion seeking dismissal on these grounds is not well taken and DENIED.

### IV. Conclusion

Defendant's Motion to Dismiss (R. 19) is hereby GRANTED in part and DENIED for the foregoing reasons. Specifically, Defendant's motion to dismiss Count One of the Amended Complaint is granted, but denied with respect to Counts Two and Three.

IT IS SO ORDERED.

Date: March 18, 2025					s/ *David A. Ruiz*
						David A. Ruiz
						United States District Judge